**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ROBERT NEEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 12-CV-572-PJC |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Claimant, Robert Neel ("Neel"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits and supplemental security income benefits under the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Neel appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Neel was not disabled. For the reasons discussed below, the Court **REVERSES AND REMANDS** the Commissioner's decision.

**Claimant's Background**

Neel was 53 years old at the time of the hearing before the ALJ on November 29, 2010.

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, the current Acting Commissioner of the Social Security Administration, is substituted for Michael J. Astrue as Defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

(R. 26). He was 5'10" tall, and he weighed about 240 pounds. *Id*. He had a sixth grade education. (R. 27). He served in the Army from 1973 to 1979. (R. 27-28). Neel stated that he had worked at a grocery store cooking 40 to 50 pound chickens. (R. 40). That job exposed him to extreme heat, especially in the summer time. (R. 40-41). He testified that he last worked as a greenskeeper in 2009, and had stopped working after experiencing heatstroke. (R. 29). He made no attempt to return to work. *Id.*

Neel said the he was unable to work because he now had a low tolerance for heat, including dizziness and body cramps. (R. 30-31). He also experienced shoulder pains, numbness and tingling in his hands and arms, and had difficulty holding on to things with his hands. (R. 31). He said that he could not reach very high either. (R. 32). At the time of the hearing, Neel said he was only able to lift ten pounds without pain. (R. 41). According to Neel, his wife had to help him with putting on clothes and bathing. *Id.* He said that he could not bend over far enough to put his own socks on. *Id.* Neel said that he had to wear house shoes because of swelling in his feet. *Id.*

Neel testified that if he sat too long, his hips would swell up and he would feel tingling all the way to his feet. (R. 33). He also said that if he stood too long, his feet became swollen and he felt pain. *Id.* He estimated he could stand only three to five minutes before he needed to sit down. (R. 33-34). He could walk less than a block. (R. 34). Neel said he could only sit 15 to 20 minutes before he had to move, stand, or stretch. (R. 35). He reported that he did not do lawn work, he had to sit if he went to the grocery store with his wife, and he could not carry groceries into the house when they returned. *Id.* Neel also stated that he could not cook a full meal because he could not stand that long. *Id.*

Neel reported he had difficulty reading and following instructions. (R. 36). He could

follow three or four-step instructions if the process was explained to him and if he completed the steps immediately. *Id.* If he waited, then he would forget the process. *Id.* He said his wife had to pay bills and write checks. *Id.*

Neel said that in a typical day, he would go to bed early after taking medication, but he would be awakened by pain about 12:00 a.m. or 1:00 a.m. (R. 36). He would get up, walk around, and take another sleeping pill. (R. 36-37). Then, he usually woke up two or three more times until he would awaken for the day around 6:00 a.m. or 7:00 a.m. *Id.* Neel reported that he usually made a pot of coffee in the morning and then sat on his couch for 15 to 20 minutes before he needed to get up and walk around. *Id.* He would repeat this process throughout the day. *Id.* He said he would try to take a nap, but could not sleep more than 30 to 40 minutes without pain in his hip and shoulder. *Id.*

Neel said he would get easily irritated with strangers. (R. 38). He did not have a driver's license and relied on others for rides. (R. 41). When he would ride in a car, he had to leave early so that he could take frequent breaks. (R. 38-39). He said he was not able to watch a complete TV show without getting up to walk around. (R. 39). He and his wife were not able to attend social activities, such as going out to dinner, because he was not able to sit down for that length of time. *Id.*

Neel said that he had reduced his smoking from two-and-a-half packs per day to a pack-and-a-half per day. (R. 40). He also quit drinking a month before the hearing because the doctor at the Veterans' Administration ("VA") told him that he needed to quit drinking before he could start treatment for Hepatitis C. *Id.*

On May 9, 2008, Neel was seen by Wellington G. Robbins, M.D., at the VA Outpatient Clinic for a follow-up on his hypertension, chronic obstructive pulmonary disease, high lipids,

3

degenerative joint disease, and increased glucose. (R. 199-211). He reported that he had been feeling well and had no complaints except frequent nighttime urination. (R. 200-01). Neel had a history of hypertension but had been faithful in taking his medications and monitoring his blood pressure at home. (R. 200). On the visit, he was re-established with the clinic for routine health maintenance. *Id.* Noted surgical history included mitral valvuloplasty[2] and lumbar discectomy.[3] *Id.* It was noted that Neel smoked a pack-and-a-half of cigarettes per day, drank 12 beers three days per week, and weighed 217 pounds. (R. 200-01). Neel was assessed with having hypertension and back pain. (R. 203). Lab results and medications were reviewed with him. (R. 204). Dr. Robbins discussed controlling alcohol use and tapering toward discontinued use of tobacco. *Id.* Neel was instructed to return to the clinic in nine months. *Id.*

On March 12, 2009, Neel presented to Dr. Robbins at the VA for a follow-up visit. (R. 188-97). His weight had increased to 232 pounds and weight loss counseling was provided. (R. 188-89). A weight management treatment program was discussed and offered to Neel, but he was not interested at that time. (R. 190). Neel reported a decrease in cigarette smoking to one pack-per-day. (R. 189). He was offered cessation counseling, but he indicated an unwillingness to quit at that time. (R. 196). Neel reported a decrease in his alcohol consumption, two to four times per month at one or two drinks per consumption. (R. 192).

Also during the March 12, 2009 visit, Neel reported increased pain in his left leg and right shoulder. (R. 193). Neel reported increased insomnia and that he was drinking more to compensate. (R. 194). Examination revealed right shoulder tenderness with no impingment and

---

[2] Mitral valvuloplasty is surgery to repair a left valve of the heart. *Dorland's Illustrated Medical Dictionary* 1188, 2051 (29th ed. 2000) (hereinafter "Dorland's").

[3] Lumbar discectomy is the surgical removal of a disk from the lumbar spine. *Dorland's* at 553, 1092.

4

tenderness in the left hip. *Id.* Neel was assessed with right shoulder bursitis[4], left hip bursitis, hypertension, tobacco use, alcohol abuse, and insomnia. (R. 195). Neel was instructed to return to the clinic in nine months. *Id.*

On March 13, 2009, Dr. Robbins mailed Neel a copy of his lab results along with a letter indicating an abnormality in liver function tests. (R. 187). Dr. Robbins advised Neel to "cut back a lot on the alcohol intake, and ideally would . . . completely before your liver becomes permanently damaged." *Id.*

On August 5, 2009, Neel was treated by Michael V. Priest, D.O., at Pawhuska Hospital Emergency Room for possible heatstroke. (R. 238-43). He complained of abdominal cramps, shortness of breath, dizziness, nausea, hand cramps, and leg cramps. (R. 238). Neel reported that he had become very pale while working outside doing landscaping. (R. 243). He had been drinking fluids and had not stopped sweating, but he felt weak and could no longer tolerate the muscle cramps. *Id.* After receiving IV fluids and rest, he was discharged alert and oriented with normal vital signs. (R. 239-41). He was given instructions to rest 24 hours, stay hydrated, limit exposure to heat, and follow-up with his preferred care provider if symptoms returned. (R. 240-41).

On December 1, 2009, Neel was seen by Dr. Robbins at the VA for a routine follow-up visit. (R.176-86). He reported increased muscle pain since his heat-related injury in August. (R. 177). Neel complained of pain in his legs, shoulders, hips, and feet. (R. 181). He reported chronic pain for more than three months and a pain intensity level of five. *Id.* The pain was described as a dull ache that lasted all day, every day. *Id.* The pain was better with medication

---

[4] Bursitis is "inflamation of a bursa . . . ." *Dorland's* at 269. Bursa is "a sac or saclike cavity filled with viscid fluid and situated at places in the tissues at which friction would otherwise develop." *Id.* at 266.

5

and worse if he sat or stood too long. *Id.* Dr. Robbins noted that gait and station were normal. (R. 178). Neel believed his heart was doing well and he had no chest pains. (R. 177). Examination revealed only a mild heart murmur. *Id.*

On the December 1 visit, Neel was assessed with hypertension, mitral valve disease, and muscle cramps and pains. *Id.* Lab tests showed mild abnormal liver function and elevated lipids. (R. 179). Neel weighed 246 lbs and "was provided with weight loss counseling for associated medical conditions." (R. 179-80). "This included suggestions on reducing caloric intake, on progressive use of excercise, and the offer of help from [the VA's] Nutrition Service." (R. 180). Neel received education and literature regarding pain management. (R. 181). Neel reported smoking one-and-a-half packs of cigarettes per day. (R. 182). He also reported feeling down, depressed, and hopeless several days per week. (R. 184). Neel was advised to return in three months. (R. 179).

On May 26, 2010, Neel presented to Dr. Robbins at the VA for a follow-up appointment. (R. 245-55). He reported that he had not improved; he had increased pain in his right shoulder and right hip, and his activity level had declined because of muscle and joint pain. (R. 253). His joints were not hot or tender to touch and his muscles were not tender. *Id.* Neel reported experiencing bi-temporal pulsating headaches that lasted one to three hours. *Id.* During those times, Neel could not tolerate light and to find relief, he would need to sit in a dark room and rest. *Id.* Eyes, ears, neck, and throat were normal. *Id.* Neck, chest, and abdomen were normal. *Id.* Both shoulders were noted as having a decreased range of motion, with the right shoulder worse than the left shoulder. *Id.* Discomfort in passive range of motion, tightness in the hamstrings, and tenderness with stress of the sacroiliac joints were all noted. (R. 253-54). Gait and station were normal and deep tendon reflexes were normal. (R. 254). Neel was assessed

with joint pain, generalized muscle pain, and hypertension. *Id.*

During the visit on May 26, 2010, x-rays were taken of Neel's shoulders, hips, and lumbar spine. *Id.* Minimal to mild degenerative joint change was noted in both the right and left shoulder, as well as minimal to mild degenerative change in both hip joints. (R. 245-47). There was moderate degenerative change in the lumbosacral spine and "[c]alcification of the iliac artery." (R. 246).

During the visit on May 26, 2010, Neel was counseled on alcohol use and associated problems, was advised to abstain from use, but he declined to consider substance abuse treatment. (R. 254). He was also given information to help him quit smoking, but Neel again indicated an unwillingness to quit. (R. 255).

On May 26, 2010, Neel completed a "Handicapped Parking Placard Application" with assistance from Dr. Robbins. (R. 244). Dr. Robbins marked on the application that Neel could not "walk 200 feet without stopping to rest" and "[was] severely limited in his [ ] ability to walk due to an arthritic, neurological, or orthopedic condition . . . ." *Id.* The request was for a five year placard. *Id.*

On June 29, 2010, Neel completed a "Discharge Application: Total and Permanent Disability"[5] with assistance from Dr. Robbins. (R. 256-57). Dr. Robbins diagnosed Neel with generalized myositis[6] and degenerative joint disease. (R. 257). He described the severity of Neel's condition as intractable muscle and joint pain. *Id.* Dr. Robbins marked on the application that Neel could not sit longer than 30 minutes and walking was limited to less than 100 feet. *Id.*

---

[5] This form was an application for relief from student loan obligations due to total and permanent disability. (R. 256).

[6] Myositis is "inflamation of a voluntary muscle." *Dorland's* at 1244.

He noted that Neel was very slow at performing his activities of daily living but there were no social or behavioral limitations. *Id.*

On August 3, 2010, Dr. Robbins completed a "Medical Source Opinion of Residual Functional Capacity" form indicating that Neel could stand/walk less than two hours in an eight hour workday. (R. 258). Medical findings to support Dr. Robbins assessment were noted as "[g]eneralized muscle pain, decreased range of motion in shoulders and hips." *Id.*

On August 20, 2010, Neel underwent Hepatitis C testing at the VA. (R. 260-62). On September 13, 2010, Richard Jesudass, M.D., noted his follow-up conversation with Neel regarding the Hepatitis C test. (R. 259, 263-64). Neel was advised that he needed to stop smoking and drinking. (R. 259). Dr. Jesudass indicated that Neel would be ineligible for Hepatitis C treatment until he was free from drinking alcohol for at least six months. *Id.* Because Neel suffered from chronic bronchitis and early COPD, the doctor advised him to quit smoking. *Id.* Neel agreed to quit both, but Dr. Jesudass noted his doubt that Neel was sincere about his desire to quit. *Id.* Dr. Jesudass recommended both the alcohol rehabilitation and smoking cessation clinics; but acknowledged that both would cause a financial burden on Neel because he lacked income. *Id.*

On December 19, 2009, Neel was examined by agency consultant David Wiegman, M.D., for complaints of back and leg pain, right shoulder pain, and headaches. (R. 221-27). Neel reported a history of back injury, lower back surgery, and chronic pain with associated leg pain. (R. 221). He reported a decreased range of motion and pain in right shoulder from previous injury. *Id.* Neel reported experiencing headaches lasting an hour or two per day that would get better with Ibuprofen. *Id.* He reported that because of back and foot pain, he could not walk more than a block and could not stand more than approximately ten minutes or lift more

than 20 pounds. *Id.* His reported daily activities were "not much." *Id.*

Dr. Wiegman's musculoskeletal examination revealed:

> Arm and leg strength is normal at 5/5. Grip strength is normal at 5/5. Arm and leg range of motion is normal except for his right shoulder, he can't abduct his right shoulder past 90 degrees. Back exam, the claimant has a slightly decreased extension at 15 degrees and he does have pain on all movements of his back but no significant tenderness to palpation over his back. Neck exam, is normal with normal range of motion and no significant pain. There is no joint swelling, erythema, effusion, or deformities noted.

(R. 222). Dr. Wiegman also noted that Neel "had a normal symmetric steady gait. He [could] walk on his toes and heels separately and he was able to walk heel-to-toe fairly well. He had good coordination with normal opposition of the thumb to fingers." *Id.*

On January 13, 2010, agency consultant, Luther Woodcock, M.D., completed a "Physical Residual Functional Capacity Assessment." (R. 229-36). Dr. Woodcock found that Neel could occasionally lift and/or carry 50 pounds and could frequently lift and/or carry 25 pounds. (R. 230). He found that Neel could stand and/or walk with normal breaks approximately six hours in an eight hour workday and could sit and/or walk with normal breaks approximately six hours in an eight hour workday. *Id.* He found that Neel's ability to otherwise push and/or pull was unlimited. *Id.* In explaining his findings, Dr. Woodcock summarized Neel's complaints and reviewed Dr. Wiegman's examination. *Id.*

Dr. Woodcock opined that Neel had no postural limitations except for ocassional kneeling. (R. 231). He found that Neel had no manipulative limitations except for only "[o]ccasional overhead reaching." (R. 232). There were no established visual limitations, communicative limitations, or environmental limitations. (R. 232-33).

## Procedural History

Neel filed applications in September 2009 for Title II disability insurance benefits and for

9

Title XVI supplemental security income benefits under the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (R. 102-09). Neel alleged onset of disability as of August 5, 2009. (R. 106). The applications were denied initially and on reconsideration. (R. 55-62, 68-72). A hearing before ALJ Charles Headrick was held on November 29, 2010. (R. 21-48). By decision dated December 8, 2010, the ALJ found that Neel was not disabled. (R. 7-18). On September 27, 2012, the Appeals Council denied review of the ALJ's findings. (R. 1-6). Thus, the decision of the ALJ represents a final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[7] *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988)

---

[7] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education,

(detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.*

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id.* (*quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

### Decision of the Administrative Law Judge

The ALJ found that Neel met insured status requirements through December 31, 2013. (R. 12). At Step One, the ALJ found that Neel had not engaged in substantial gainful activity since his alleged onset date of August 5, 2009. *Id.* At Step Two, the ALJ found that Neel had severe impairments of back disorder, unspecified arthopathies, and Hepatitis C. *Id.* At Step Three, the ALJ found that Neel's impairments, or combination of impairments, did not meet any Listing. (R. 13).

---

work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

The ALJ determined that Neel had the RFC to perform a full range of light work, with the additional limitation of occasional stooping and a limited ability to reach overhead. *Id.* At Step Four, the ALJ found that Neel could not perform any past relevant work. (R. 16). At Step Five, the ALJ found that there were jobs in significant numbers in the national economy that Neel could perform, considering his age, education, work experience, and RFC. (R. 17). Thus, the ALJ found that Neel was not disabled from August 5, 2009 through the date of the decision. *Id.*

## Review

Neel argues that the ALJ's decision should be reversed, asserting that the ALJ failed to properly consider his treating physician's opinions and that the ALJ's credibility assessment was flawed. The Court finds that this case must be reversed and remanded because the ALJ's credibility assessment was not legally sufficient. Because reversal is required due to errors in the ALJ's credibility assessment, the other issue raised by Neel is not addressed.

Credibility determinations by the trier of fact are given great deference. *Hamilton v. Secy. of Health & Human Servs.,* 961 F.2d 1495, 1499 (10th Cir. 1992).

> The ALJ enjoys an institutional advantage in making [credibility determinations]. Not only does an ALJ see far more social security cases than do appellate judges, [the ALJ] is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion.

*White v. Barnhart,* 287 F.3d 903, 910 (10th Cir. 2001). In evaluating credibility, an ALJ must give specific reasons that are closely linked to substantial evidence. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186.

The Court is unable to find any discussion of Neel's credibility that approaches the required standard of providing specific reasons closely linked to substantial evidence. The only language addressing credibility is a boilerplate provision that Neel's "statements concerning the

intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 14). The use of boilerplate language in Social Security disability cases was discussed and discouraged by the Tenth Circuit in *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004). The court explained that boilerplate language was a conclusion in the guise of findings, whereas the task of the ALJ is to explain the specific facts of the case before him and how those facts led him to his decision. *Id.* Boilerplate statements fail to inform the reviewing court "in a meaningful, reviewable way of the specific evidence the ALJ considered." *Id. See also Bjornson v. Astrue,* 671 F.3d 640, 644-46 (7th Cir. 2012) (opinion authored by Judge Richard Posner criticizing the Social Security Administration's use of "templates" in ALJ disability decisions).

The undersigned is mindful that the simple inclusion of boilerplate, inapplicable, or improper language does not automatically indicate that the ALJ's credibility analysis is fatally flawed. Boilerplate provisions are not harmful in and of itself, but they are not a substitute for actual analysis of the question of credibility by the ALJ. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012) ("boilerplate is problematic only when it appears 'in the absence of a more thorough analysis'") (*quoting Hardman*, 362 F.3d at 679).

After the initial boilerplate introduction, the ALJ summarized medical records from 2009 and 2010. (R. 14-16). He also discussed the examination of agency consultant Dr. Wiegman and the opinion evidence from Dr. Robbins. *Id.* The ALJ did provide an analysis explaining why the opinions of Neel's treating physician were not entitled to controlling weight, but the ALJ failed to include any discussion concerning Neel's credibility. *Id.* The ALJ did not affirmatively link any *specific* reasons for discounting Neel's credibility with *any* evidence, much less with substantial evidence, as required. *See Keyes-Zachary,* 695 F.3d at 1172 (*citing*

*Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)). The ALJ simply concluded that he:

> [did] not discount all of the claimant's complaints. The [ALJ] concludes that there are objective findings that support the claimant's allegations of back disorder and unspecified arthopathies. Therefore, the claimant's residual functional capacity is reduced to performing no more than a range of light and sedentary work activity. The [ALJ] further finds that the claimant's residual functional capacity is reasonable, and that the claimant could function within those limitation without experiencing significant exacerbation of his symptoms.

(R. 16). This provision is also conclusory boilerplate and it does not illuminate any specific, reviewable reasons why the ALJ found Neel to be less than fully credible. *Hardman*, 362 F.3d at 678-81. Lack of a credibility analysis requires reversal. *Id.*

While there may have been sufficient reasons with supporting evidence that could justify an adverse credibility determination, the undersigned finds that the Court cannot make that determination without impermissibly substituting its judgment for that of the ALJ. *Peeper v. Astrue*, 418 Fed. Appx. 760, 766 (10th Cir. 2011) (unpublished) (*citing Allen v. Barnhart*, 357 F.3d 1140, 1142, 1145 (10th Cir. 2004)). On remand, the ALJ should provide a thorough analysis of Neel's subjective complaints, including a discussion of factors listed in 20 C.F.R. § 404.1529(c). *Sistler v. Astrue*, 410 Fed. Appx. 112, 117 (10th Cir. 2011) (unpublished); *Hamby v. Astrue*, 260 Fed. Appx. 108, 113 (10th Cir. 2008) (unpublished).

Because the errors of the ALJ related to the credibility assessment require reversal, the undersigned does not address the remaining contention of Neel. On remand, the Commissioner should ensure that any new decision sufficiently addresses all issues raised by Neel.

The undersigned emphasizes that "[n]o particular result" is dictated on remand. *Thompson v. Sullivan*, 987 F.2d 1482, 1492-93 (10th Cir. 1993). This case is remanded only to assure that the correct legal standards are invoked in reaching a decision based on the facts of the case. *Angel v. Barnhart*, 329 F.3d 1208, 1213-14 (10th Cir. 2003) (*citing Huston v. Bowen*, 838

F.2d 1125, 1132 (10th Cir. 1988)).

## Conclusion

Based upon the foregoing, the Court **REVERSES AND REMANDS** the decision of the Commissioner denying disability benefits to Claimant for further proceedings consistent with this Order.

Dated this 4th day of November, 2013.

Paul J. Cleary
United States Magistrate Judge